AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
### Southern District of California

FILED

APR 2 4 2019

SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

one white UNIREX 2.0 "Swing 16 GB" thumb drive

)
)
)
)
)
)
)

Case No.   19MJ1680

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

**HSI Special Agent Matthew Rhoa**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/24/2019

_____
*Judge's signature*

City and state:  San Diego, CA

**Honorable Ruben B. Brooks, U.S. Magistrate Judge**
*Printed name and title*

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is the white UNIREX 2.0 "Swing 16 GB" thumb drive found in the personal property of Leonor Jara-Bobadilla (the "**Target Device**"). The device is shown here:



The **Target Device** is currently in the possession of the U.S. Department of Homeland Security, Homeland Security Investigations, which is located at 880 Front Street, San Diego, CA 92101.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant. The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from third-party applications, photographs, audio files, videos, and location data:

a.      tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or federally controlled substances within the United States;

b.      tending to identify accounts, facilities, and/or services–such as email addresses and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States;

c.      tending to identify coconspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the storage device; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT**

I, Matthew Rhoa, being duly sworn, hereby state as follows:

**INTRODUCTION**

1.     This affidavit supports an application for a warrant to search a white UNIREX 2.0 "Swing 16 GB" thumb drive, as further described in Attachment A (the "**Target Device**"), and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B. This search supports an investigation and prosecution of Leonor Jara-Bobadilla ("JARA") for one or more of the crimes mentioned above.  A factual explanation supporting probable cause follows.

2.     The **Target Device** was seized on October 17, 2018 from JARA after she was arrested for driving a black 2000 Mazda MPV (the "Vehicle") into the United States through the San Ysidro Port of Entry (the "SYPOE") with approximately 37.30 kilograms of methamphetamine, 24.04 kilograms of cocaine, and 5.84 kilograms of heroin hidden in the quarter panels and doors. The **Target Device** was located in JARA's personal property and is currently in the possession of the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement / Homeland Security Investigations ("HSI"), which is located at 880 Front St., San Diego, CA 92101.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4.     The information contained in this affidavit is based upon my experience and training and consultation with other federal, state, and local law enforcement agents.  The evidence and information contained herein was developed from my personal investigation of this matter and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents

1

1  regarding this investigation.  Instead, it contains only those facts necessary to establish

2  probable cause.

### EXPERIENCE AND TRAINING

4     5.    I am a Special Agent with HSI, which is a component agency of the DHS.  I

5  have been employed as an HSI Special Agent since November 2017. I am currently

6  assigned to the HSI San Diego field office in San Diego, California. My job duties are to

7  investigate the smuggling of controlled substances into the U.S. I have been cross-

8  designated by the U.S. Drug Enforcement Administration ("DEA") to conduct narcotics

9  investigations and enforce provisions of the Federal Controlled Substances Act, pursuant

10  to Title 21 of the United States Code. Prior to employment with HSI, I was a federal law

11  enforcement officer with the Federal Air Marshal Service (FAMS), also a component of

12  DHS.  I was assigned as a Federal Air Marshal from July 2010 to November 2017 at the

13  Washington DC., Baltimore, MD, and Chicago, IL field offices. Prior to my federal law

14  enforcement career, I was a police officer in Michigan certified by the Michigan

15  Commission on Law Enforcement Standards (MCOLES) from July 2000 to December

16  2008. I received a Master's of Science in criminal justice administration and a Bachelor of

17  Arts degree in criminal justice from the Ferris State University in Big Rapids, Michigan.

18     6.    As an HSI Special Agent, my formal training consisted of six months of

19  residential instruction at the Federal Law Enforcement Training Center in Brunswick,

20  Georgia, which included training related to narcotics and dangerous drugs. I have

21  participated in training programs related to controlled substances, including but not limited

22  to marijuana, cocaine, methamphetamine, and heroin.  I have also received training in the

23  methods used by narcotics traffickers to import, distribute, package and conceal controlled

24  substances.  Moreover, I have participated in numerous investigations and executed arrests

25  for drug-related offenses, including possession with the intent to distribute, transportation,

26  and the importation of controlled substances.

27     7.    Additionally, through the course of my duties as a Special Agent, I have talked

28  with other experienced narcotics investigators and received informal training regarding

1  illegal drug trends and methods of operation for multi-kilogram drug dealing and
2  trafficking in the San Diego area.

3      8.    Based on my training and experience, I am familiar with the ways in which
4  drug smugglers and traffickers conduct their business.  Indeed, during the course of my
5  duties I have (1) worked as a case agent, directing specific drug-related investigations; (2)
6  worked as a surveillance agent who observed and recorded movements of individuals
7  suspected of trafficking drugs; (3) participated in the execution of search warrants related
8  to drug investigations; (4) initiated and executed numerous arrests for drug-related
9  offenses, including possession with the intent to distribute; and (5) interviewed criminal
10 defendants, witnesses, and informants in furtherance of investigations into the illegal
11 smuggling and trafficking of controlled substances.  Through these duties, I have gained a
12 working knowledge and insight into the operational habits of drug smugglers and
13 traffickers.

14     9.    Based upon my training and experience and consultations with law
15 enforcement officers experienced in drug smuggling and trafficking investigations, and all
16 the facts and opinions set forth in this affidavit, I am aware that drug traffickers rely on
17 various forms of data to coordinate the trafficking of drugs, including the movement of drugs
18 across the international border. Such data can include GPS "location" data, for places where
19 drugs are being picked up and dropped off; related mapping data for transportation routes;
20 text messages and other forms of electronic communications with customers and traffickers;
21 pictures of the drugs, as well as of transportation vehicles and transporters or their identifying
22 materials; documents detailing amounts of money paid and owed for drugs, customers, fellow
23 suppliers, sources, and other related forms of information; relevant addresses; and contact
24 information for any of the foregoing individuals.

25     10.    Based upon my training and experience and consultations with law
26 enforcement officers experienced in drug smuggling and trafficking investigations, and all
27 the facts and opinions set forth in this affidavit, I am also aware that the various foregoing
28 kinds of information can be electronically stored on portable storage media, commonly

1  known as "thumb drives" and "flash drives." Generally speaking, such devices are small
2  and capable of easy concealment; as storage devices, they can store a wide variety of
3  electronic files, including files containing the foregoing information. I know based upon
4  my training, education, and experience investigating drug smuggling and trafficking
5  conspiracies that searches of such a device, when found in possession of a person who has
6  participated in the movement of drugs, can yield evidence:

7         a. tending to indicate efforts to import methamphetamine, or some other
8            federally controlled substances from Mexico into the United States, or possess
9            and/or transport with the intent to distribute methamphetamine or federally
10           controlled substances within the United States;

11        b. tending to identify accounts, facilities, and/or services–such as email
12           addresses and phone numbers–used to facilitate the importation of
13           methamphetamine, or some other federally controlled substances from
14           Mexico into the United States, or possession and/or transportation with the
15           intent to distribute methamphetamine or federally controlled substances
16           within the United States;

17        c. tending to identify coconspirators, criminal associates, or others involved in
18           importation of methamphetamine, or some other federally controlled
19           substances from Mexico into the United States, or possession and/or
20           transportation with the intent to distribute methamphetamine or federally
21           controlled substances within the United States;

22        d. tending to identify travel to or presence at locations involved in the
23           importation of methamphetamine, or some other federally controlled
24           substances from Mexico into the United States, or possession and/or
25           transportation with the intent to distribute methamphetamine or federally
26           controlled substances within the United States, such as stash houses, load
27           houses, or delivery points;

28

1

2

  e. tending to identify the user of, or persons with control over or access to, the storage device; and/or

3

4

5

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

6

**FACTS SUPPORTING PROBABLE CAUSE**

7   11. According to a report prepared by CBPO David Schiano, on October 17, 2018,

8 at approximately 0826 hours, Schiano was conducting pre-primary inspections at the

9 SYPOE when he approached the Vehicle bearing plates BA/MM A65NTG9 that JARA

10 was driving. CBPO Schiano used a K910B Buster Contraband Detector on the rear quarter

11 panel on the driver side of the Vehicle and received a high reading. CBPO Schiano began

12 a cursory inspection of the Vehicle and received high Buster readings when checking the

13 inside of the driver-side quarter panel, which CBPO Schiano opened with a screwdriver

14 and observed packages wrapped in cellophane.

15   12. According to a report prepared by CBPO Nicholas Pernicano, a secondary

16 inspection of the Vehicle's quarter panels, doors, and dashboard revealed about 74

17 packages weighing 37.30 kilograms, which field-tested positive for methamphetamine; 20

18 packages weighing 24.04 kilograms, which field-tested positive for cocaine; and 5

19 packages weighing 5.84 kilograms, which field-tested positive for heroin.

20   13. On October 17, 2018, at approximately 9:21 a.m., I was notified of the drug

21 seizure and responded to the SYPOE, where JARA, the Vehicle, methamphetamine,

22 cocaine, heroin, and the JARA's personal property (including her phone) were being held

23 for further processing.[1] As relevant to this application, JARA's personal property was

24 seized that day and retained by HSI.

25   14. At approximately 12:46 p.m., I made contact with JARA at the SYPOE. I

26

27

28

[1] A logical extraction of the contents of JARA's phone was performed using the Cellebrite machine at the port of entry. None of those contents are relied upon for purposes of establishing probable cause in this affidavit.

5

1  subsequently interviewed JARA that day, and she denied knowledge of the narcotics in the

2  Vehicle. She said she had responded to an advertisement in a newspaper and had been

3  contacted by a man named Alfredo GARCIA (GARCIA). JARA said that GARCIA

4  arranged for the Vehicle to be registered in her name and that GARCIA would provide the

5  Vehicle to her when she crossed into the United States.  JARA said she would drive the

6  Vehicle into the United States and purchase about $20 worth of cleaning supplies and then

7  return to Mexico and deliver the Vehicle back to GARCIA.  JARA said when she drove

8  the Vehicle into the United States, she would park the Vehicle in a parking lot close to the

9  international border and then call GARCIA to tell him where the vehicle was

10  parked.  JARA then said she would leave the vehicle and go shopping, initially stating only

11  at the ".99 cent" store, but later stating that she would go grocery shopping or to church

12  and that she would be away from the Vehicle for several hours.  JARA said she would then

13  call GARCIA before returning to the Vehicle.  JARA said she was paid $100 in cash for

14  each trip.

15      15.    My review of the TECs records and crossing history for JARA reveals that

16  from August 31, 2018 to October 17, 2018 she crossed the United States/Mexico border

17  approximately 13 times in the Vehicle.

18      16.    As noted, JARA said in her interview that she had responded to an

19  advertisement in a newspaper and been contacted by GARCIA. Subsequently, JARA has

20  provided an electronic copy of the advertisement, which is dated August 13, 2018. JARA's

21  phone has a communication with the phone number listed on the advertisement on August

22  14, 2018.

23      17.    During my search of JARA's phone pursuant to two search warrants (19-MJ-

24  023 & 19-MJ-1444 (S.D. Cal.)), I found that on July 31 and August 8, JARA missed two

25  calls from a phone number saved to the contact "Alfred G." After August 13, JARA tried

26  to call this number at least one time, and had at least one conversation with the user of that

27  number. I also note from my search that she had communications with contacts saved as

28  "Alfredo," "Alfredo Gcia," "Alfredo G," and "Alfredito G." These appear to me to be

1 variations on the name "Alfredo Garcia," and so I believe that before August 13, 2018,

2 JARA had at least two attempted phone communications with GARCIA.

3      18.    As noted, JARA's personal property was seized at the time of her arrest. On

4 April 18, 2019, I went through JARA's personal property to formally seize items of

5 evidentiary value (and to return the balance of the property to JARA). In that search, I

6 found the **Target Device** in an inner pocket of JARA's handbag.

7      19.    Based upon my experience and investigation in this case, there is probable

8 cause to believe that JARA, as well as other persons currently unknown, were involved in

9 an ongoing conspiracy to import and transport methamphetamine and other federally

10 controlled substances. Based on my experience investigating drug smugglers and

11 traffickers, there is probable cause to believe that the **Target Device** contains evidence of

12 efforts to coordinate with coconspirators regarding the importation, transportation, and

13 distribution of methamphetamine and other federally controlled substances, and to

14 otherwise further this conspiracy both inside and outside of the United States.

15      20.    Accordingly, based upon my experience and training, consultation with other

16 law enforcement officers experienced in drug trafficking investigations, and all the facts

17 and opinions set forth in this affidavit, there is probable cause to believe that information

18 relevant to the drug smuggling and trafficking activities of Leonor JARA Bobadilla is

19 stored in the memory of the **Target Device**.

20 **PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

21      21.    With the approval of the Court in signing this warrant, agents executing this

22 search warrant will employ the following procedures regarding electronic storage devices,

23 including electronic storage media, that may contain data subject to seizure pursuant to this

24 warrant:

25 Forensic Imaging

26      a.    The executing agents will create a forensic image of the **Target**

27 **Device**. A forensic image is an exact physical copy of the media. A forensic image

28 captures all the data on the media without the data being viewed and without

7

changing the data. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of the data for information subject to seizure pursuant to this warrant. After verified images have been obtained, the owner of the device will be notified and the original device returned after trial in this matter, or within forty-five days of seizure absent further application to this court, whichever is longer.

<u>Identification and Extraction of Relevant Data</u>

b.       After obtaining a forensic image, the data will be analyzed to identify and extract data subject to seizure pursuant to this warrant. Analysis of the data following the creation of the forensic image can be a highly technical process requiring specific expertise, equipment and software. There are thousands of different hardware items and software programs, and different versions of the same programs, that can be commercially purchased, installed, and custom-configured on a user's computer system; so too, items like the **Target Device** can be configured in different ways. Even apparently identical computers and media can be different with respect to configuration, including permissions and access rights, passwords, data storage, and security. It is not unusual for a computer forensic examiner to have to obtain specialized hardware or software, and train with it, in order to view and analyze imaged data.

c.       Analyzing the contents of a storage device like the **Target Device,** even without significant technical challenges, can be challenging. Searching by keywords, for example, often yields many thousands of hits, each of which must be reviewed in its context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant hit does not end the review process for several reasons. The media may have stored metadata and other information about a relevant electronic record – e.g., who created it, when and how it was created or downloaded or copied, when it was last accessed, when it was last modified, when it was last printed, and when it was deleted. Keyword searches may also fail to

discover relevant electronic records, depending on how the records were created, stored, or used. For example, keywords search text, but many common electronic mail, database, and spreadsheet applications do not store data as searchable text. Instead, the data is saved in a proprietary non-text format. Documents, even if never saved to the media, may be recoverable by forensic programs. Graphic images, unlike text, are not subject to keyword searches. In addition, a particular relevant piece of data does not exist in a vacuum. To determine who created, modified, copied, downloaded, transferred, communicated about, deleted, or printed the data may require a search of other events documented on the media in the time periods surrounding activity regarding the relevant data. Information about which user had logged in to the computer when the media was in use, whether users share passwords, whether the computer was connected to other computers or networks, and whether the user accessed or used other programs or services in the time period surrounding events with the relevant data can help determine who was sitting at the keyboard; this too may help determine who used and exercised control over the **Target Device**.

d.      It is often difficult or impossible to determine the identity of the person using the media when incriminating data has been created, modified, accessed, deleted, printed, copied, uploaded, or downloaded solely by reviewing the incriminating data. Computers generate substantial information about data and about users that generally is not visible to users; such data might be available on media like the **Target Device** if, for example, the user saved data to the media in the midst of using the computer. Computer-generated data, including registry information, computer logs, user profiles and passwords, web-browsing history, cookies and application and operating system metadata, often provides evidence of who was using the computer—and by extension, the media. In addition, evidence such as electronic mail, chat sessions, photographs and videos, calendars and address books stored on the media may identify the user. The manner in which the user has

9

1   structured and named files, run or accessed particular applications, and created or

2   accessed other, non-incriminating files or documents, may serve to identify a

3   particular user. For example, if an incriminating document is found on the media but

4   attribution is an issue, other documents or files created around that same time may

5   provide circumstantial evidence of the identity of the user that created the

6   incriminating document.

7          e.      Analyzing data on the **Target Device** may be time-consuming. For

8   example, a single megabyte of storage space is roughly equivalent of 500 double-

9   spaced pages of text; a single gigabyte of storage space, or 1,000 megabytes, is

10  roughly equivalent of 500,000 double-spaced pages of text. Assuming the **Target**

11  **Device** contains sixteen gigabytes of storage space, this would amount to 8,500,000

12  pages of text to review. And, this data may be stored in a variety of formats or

13  encrypted (several new commercially available operating systems provide for

14  automatic encryption of data upon shutdown of the computer). Running keyword

15  searches takes longer and results in more hits that must be individually examined for

16  relevance. And, once reviewed, relevant data leads to new keywords and new

17  avenues for identifying data subject to seizure pursuant to the warrant.

18         f.      Based on the foregoing, identifying and extracting data subject to

19  seizure pursuant to this warrant may require a range of data analysis techniques,

20  including hashing tools to identify data subject to seizure pursuant to this warrant,

21  and to exclude certain data from analysis, such as known operating system and

22  application files. The identification and extraction process, accordingly, may take

23  weeks. The personnel conducting the identification and extraction of data will

24  complete the analysis within thirty days of this warrant, absent further application to

25  this Court.

26         g.      All forensic analysis of the imaged data will employ search protocols

27  directed exclusively to the identification and extraction of data within the scope of

28  this warrant.

1    22.    Based on the foregoing, identifying and extracting data subject to seizure

2  pursuant to this warrant may require a range of data analysis techniques, including manual

3  review, and, consequently, may take weeks. The personnel conducting the identification

4  and extraction of data will complete the analysis within 30 days, absent further application

5  to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS DATA**

7    23.    The United States has not made any prior attempts to search the **Target**

8  **Device.**

**CONCLUSION**

10    24.    Based on all of the facts and circumstances described above, there is probable

11  cause to conclude that the **Target Device** contains evidence of violations of Title 21,

12  United States Code, Sections 952, 960, and 963.

13    25.    Because the **Target Device** was promptly seized during the investigation of

14  JARA's trafficking activities and has been securely stored, there is probable cause to

15  believe that evidence of illegal activities committed by JARA exists on the **Target Device.**

21  / / /

22  / / /

23  / / /

24    26.    WHEREFORE, I request that the court issue a warrant authorizing law

25  enforcement agents and/or other federal and state law enforcement officers to search the

26  items described in Attachment A and to seize the items listed in Attachment B, using the

27  methodology described above.

28    I swear the foregoing is true and correct to the best of my knowledge and belief.

11

Matthew Rhoa
HSI Special Agent

Subscribed and sworn to before me this 24th day of April, 2019.

The Honorable Ruben B. Brooks
United States Magistrate Judge

12